UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSHUA BUNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:11-cv-1540-WTL-DML |
| ) | |
| KHOURY ENTERPRISES, INC., ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment. Dkt. No. 23. The motion is now ripe,[1] and the Court, being duly advised, rules as follows.

### I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true the admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

---

[1] The Defendant did not reply to the Plaintiff's response, and the time for doing so has now passed.

## II. **BACKGROUND**

The undisputed facts taken in the light most favorable to the non-moving party, Plaintiff Joshua Bunn, are as follow.

Bunn was hired by Defendant Khoury Enterprises, Inc., in August 2010, to work in one of its Dairy Queen franchises.[2] Dairy Queen is "justifiably famous" for its ice cream treats, but it also serves savory items. Dairy Queen employees thus work in different departments of Dairy Queen: Grill, Chill, Expo, and cashier. In the Grill department, employees prepare various cooked menu items; in the Chill department, employees prepare ice cream treats. The Expo department is where employees deliver food to customers and keep the store clean by clearing off tables and sweeping. The cashier department involves running the cash register. Employees are required to rotate among departments as needed.

Bunn began his training in the Chill department. However, two days into training, Bunn informed store manager Larry Johnson that he was not able to perform certain Chill duties due to his vision impairment. Bunn is legally blind, having no vision in one eye, and greatly reduced vision in the other eye. This is due to cerebral scheme optic atrophy, a condition Bunn has had since infancy. Bunn cannot drive and has needed some accommodation at virtually every place he has worked.

After Bunn's request, Johnson personally began training Bunn in the different departments and working directly with him to determine which duties best suited his skills and abilities. Ultimately, Johnson trained Bunn in Expo, where Bunn was able to perform all duties. Johnson informed his supervisors to schedule Bunn exclusively in the Expo department. Bunn does not dispute these facts; however, he states in an affidavit that, after he attempted to discuss

---

[2] The parties dispute whether Bunn was hired as a part-time or full-time employee, but neither party articulates how this fact is relevant to the instant motion.

his needs with Johnson, Johnson told Bunn that he would place Bunn wherever he wanted without regard to his sight restrictions. Bunn contends that Johnson then reduced Bunn's hours. Whenever Bunn asked about getting more hours, Johnson would say, "I will schedule you when, how, and where I need you." Khoury does not dispute Bunn's averments on these latter two points.

Johnson received reports from shift managers that Bunn refused to follow directions. On November 19, 2010, shift manager Norma Caballero phoned Johnson at home to report that Bunn had shoved a trash can at her after she asked him to take out the trash. Johnson suspended Bunn for ten days and informed him that any future similar conduct would result in his termination.

Eventually Bunn realized that Khoury was never going to schedule him enough for it to be worth him continuing to work there. He also realized that Khoury "was never going to work with him on any accommodations." In fact, Johnson told Bunn that he should be looking for other work. Bunn thus resigned his employment in February 2011.

Bunn now brings the instant action, alleging that Johnson's (and, therefore, Khoury's) actions violate the ADA. Khoury has moved for summary judgment.

### III. DISCUSSION

The Americans with Disabilities Act (the "ADA") prohibits an employer from discriminating against an employee on the basis of disability with respect to terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that

the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A).

An employee alleging an employer's failure to accommodate must show that (1) he is a qualified individual; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate his disability. *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 747-48 (7th Cir. 2011). For the purpose of summary judgment, Khoury does not dispute the first two elements. The issue is whether Khoury failed to reasonably accommodate Bunn's disability.

A reasonable accommodation means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The ADA contemplates that "[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate a formal, interactive process with the [employee]. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). During the interactive process, "a party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir. 1996).

Khoury contends that it engaged in the interactive process with Bunn and ultimately provided him with a reasonable accommodation. According to Khoury, Johnson personally trained and evaluated Bunn in the various departments before permitting Bunn to work exclusively in the Expo department, where Bunn was able to perform all necessary duties. However, in response, Bunn asserts that he attempted to discuss his limitations with Johnson, but

Johnson told him that he would place Bunn wherever he wanted without regard to Bunn's sight restrictions. According to Bunn, he spoke with Johnson about this two or three times. Although these undisputed facts are not mutually exclusive, they do seem inconsistent. Thus, to the extent that Bunn's assertion that Johnson rebuffed him effectively disputes Johnson's assertion that he trained and evaluated Bunn in order to find a position for him, the Court must take Bunn's assertion as true at this stage of the case. Johnson's reaction to Bunn's request is key to evaluating whether Khoury engaged in the interactive process. If Johnson rebuffed Bunn as Bunn contends, a reasonable jury could find that Khoury failed to engage in the interactive process with Bunn.

The fact that a reasonable jury could so find does not, however, preclude summary judgment in favor of Khoury, for, as Bunn points out, there is no separate cause of action for failure to engage in the interactive process. *Rehling v. City of Chicago*, 207 F.3d 1009, 1015-16 (7th Cir. 2000); *see also Basden v. Prof. Transp. Inc.*, --- F.3d ----, 2013 WL 1891292 at *4 (7th Cir. 2013). As the Seventh Circuit has explained,

> Because the interactive process is not an end in itself, it is not sufficient for [the Plaintiff] to show that [the Defendant] failed to engage in an interactive process or that it caused the interactive process to break down. Rather, [the Plaintiff] must show that the result of the inadequate interactive process was the failure of [the Defendant] to fulfill its role in "determining what specific actions must be taken by an employer" in order to provide the qualified individual a reasonable accommodation.

*Id.* (citations omitted). This result reflects the remedial purposes of the ADA, which "seeks to ensure that qualified individuals are accommodated in the workplace, not to punish employers who, despite their failure to engage in an interactive process, have made reasonable accommodations." *Id.* at 1016.

5

Here, Bunn does not dispute that he was permitted to work exclusively in the Expo department, nor does he dispute that he was able to perform all duties in the Expo department. Bunn states that he disputes Khoury's position that it reasonably accommodated him. Bunn Br. at 6, No. 30 ("Bunn disputes this."). However, Bunn goes no further than this bald statement, which is not enough to defeat summary judgment in light of the fact that he does not contest that he was permitted to work exclusively in Expo and that he was able to perform all duties in Expo. Khoury is therefore entitled to summary judgment on this claim.

Bunn also contends that Khoury discriminated against him when Johnson did not schedule Bunn for as many hours as other employees were scheduled.[3] Khoury insists that all employees suffered a similar reduction in hours due to the nature of the ice cream business. Of course, nobody's in the market for a brain freeze when it's freezing outside. If Khoury's assertion were true, it would cast considerable doubt on Bunn's contention that he was singled out for reduced hours as a result of his disability. However, the evidence submitted on this point is in dire need of explanation and context, which Khoury does not provide.[4] The Court is therefore unable to say whether Bunn suffered a reduction in hours greater than other employees and must assume, for purposes of this motion, that Bunn's contention that he did is true.

Nevertheless, Khoury contends that a reduction in hours does not constitute an adverse employment action because "[c]oncluding otherwise would create adverse employment actions for every hourly employee working for employers during an economic downturn, or, as here, a seasonal drop-off," yet "[c]ertainly not every hourly employee working for [Khoury] who

---

[3] Bunn does not contend that the result of accommodating him with an Expo-only position resulted in fewer hours, and the Court expresses no opinion on the legal effect of an accommodation that results in fewer hours and therefore reduced compensation.

[4] In support of its assertion, Khoury points to payroll report summaries from August 2010 through February 2011.

worked less hours in January of 2011 than in previous months experienced an adverse employment action." Khoury Br. at 14, No. 24. A reduction in hours is not *per se* an adverse employment action, *see, e.g.*, *Hill v. Potter*, 625 F.3d 998, 1003 (7th Cir. 2010), but it clearly can be, and Khoury's logic does not preclude that possibility here. A reduction in hours may be an adverse employment action, but whether it triggers liability depends on other portions of the analysis – namely, whether it was the result of improper motive. The Court turns to that analysis now.

In support of his claim that his hours were cut as a result of his disability, Bunn invokes both the direct and indirect methods of proof. To establish a prima facie case of discrimination on the basis of disability under the direct method, a plaintiff may use direct or circumstantial evidence. Bunn implicitly invokes the circumstantial evidence method when he admits that "no agent of Khoury's ever said, 'We are reducing your work time because of your disability.'" Bunn Resp. at 7, No. 30. "The type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior toward other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Dickerson v. Bd. of Trs. of Comm'y Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Bunn points to three pieces of evidence that he contends combine under this rubric to raise the specter of discriminatory intent.

First, Bunn contends that he "was disciplined for something that *others were not disciplined for*, namely, looking at his cell phone." Bunn Resp. at 7, No. 30 (emphasis added).

However, this assertion is not supported by citation to any evidence, and as such, the Court disregards it.

Second, Bunn points again to Johnson's response to Bunn's request for accommodations for his vision. According to Bunn, Johnson replied that he would place Bunn wherever he wanted without regard to Bunn's sight restrictions. Third, Bunn also highlights Johnson's response to Bunn's request for more hours. Johnson replied that he would schedule Bunn when, how, and where Johnson needed Bunn.

This evidence is insufficient to support an inference of discriminatory intent. Taken at face value,[5] these statements, although brusk, do not establish any connection between Bunn's disability and his reduced hours.

In the alternative, Bunn argues that he has sufficient evidence to withstand summary judgment under the indirect method. Under the indirect method of proof, a plaintiff establishes a prima facie case of discrimination by showing that "(1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." *Dickerson*, 657 F.3d at 601. For the purposes of this motion, Khoury does not contest the first element, but he contends that Bunn cannot establish the latter three elements.

Khoury contends that Bunn was not meeting its legitimate employment expectations. Khoury argues that Bunn was disciplined for improper cell phone use during work hours, Johnson received reports from shift managers that he was refusing to follow directions, and Bunn

---

[5] The Court takes these statements at face value because Bunn argues that they establish discriminatory intent on their face. Bunn does not articulate any other theory linking the statements to his reduced hours. For example, he does not argue that his hours were reduced on the basis of poor performance reviews after Johnson placed him in department positions that he could not perform satisfactorily without accommodation.

8

was disciplined for shoving a trash can at a supervisor. Although Bunn explains in his statement of facts that he was using his cell phone to check the time so that he could perform his Expo duties, Bunn does not otherwise address this prong. In fact, he does not even generally assert that he was meeting his employer's expectations. Having failed to carry his burden on the second element of his claim under the indirect method of proof, Bunn is unable to establish his prima facie case and Khoury is entitled to summary judgment on this claim.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Khoury Enterprises, Inc.'s motion for summary judgment is **GRANTED** as to Bunn's claim for failure to accommodate his disability. The motion is also **GRANTED** as to Bunn's claim for discrimination.

SO ORDERED: 05/13/2013

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.